May it please the Court, I'm Wayne Howell, and I am the Solicitor General from the State of Nevada, and I am here on behalf of the Appellant this morning in Coyote Publishing. Nevada is different from the 49 other states. Forty-nine states have outlawed prostitution, and Nevada has, to a limited extent, legalized it. And it's the intersection of speech and prostitution that brings us here today in Nevada's unique circumstances. And so this case is different from any other case that's been reported. It involves different state interests, and it involves different necessary regulations of speech than any other case. Nevada has captured the world's oldest profession. It's captured it, and it has regulated it. It regulates it for public safety and health. This is not an ordinary commerce. This is not an ordinary case of free enterprise. It's a case of a social issue that Nevada has dealt with differently than the other states. And so applying the precedent, Central Hudson, to these different circumstances brings necessarily a different result. What you're really saying is that if you take the case law as it now exists, I mean, not as it existed at the time of Posadas, for example, but as it now exists, you have a pretty tough time, don't you? I don't think so, Your Honor. And with due respect, I'll quote your earlier words in a previous case. This is pushing the notion beyond its point of origin. This is really taking the case law to an unnecessary extreme. I meant what I said. I mean, it seems to me that it may be that no case has dealt with the circumstance. But if you took the doctrine as it now exists and applied it in the sort of orthodox, obvious fashion, it seems to me you have a tough time. So you need to come out of it in some fashion. You need to give us some kind of creative and new way of dealing with the existing case law. The way to do so, I'll stay within the framework, is focus on the state's interests. In this case, they are different. They are more weighty and more significant. The interest is in keeping the State of Nevada's conceding that this conduct is legal. It's legal in certain counties. It's illegal in others. That's why I asked the question. As I read the statute, this is unlawful conduct. Yes. That's reading the statute as it relates to the particular conduct at issue here. It's unlawful. That's 207030. And then, as I read 430, it's unlawful for any person engaged in that unlawful conduct or any owner, operator, agent, employee to do certain other things. So that's why I asked. Is the State of Nevada conceding that this is lawful conduct under the Hudson Test? I'll make a concession, a limited one. I'd like to refer back to 201-430. And what it does is criminalize advertising both in violation of 207, which you referred. 030. I'm sorry? 030. Yes. But also in violation of the parameters set up in 430 itself, even for lawful brothels. Let's just wait a minute now. Are the students all coming back in now? Is that what's happening? I'm sorry to interrupt you, but it's just noisy. Let's try not to be noisy. Okay. I hope nobody else is planning to come back in again, or if they are, they don't talk. All right. Go ahead. In answer to your question, Your Honor, this statute, 201-430, addresses both lawful and unlawful prostitution, and prohibits certain advertising even by lawful brothels. Well, I take you at your word. It's very good. The big problem, of course, is if we get to commercial speech, the first question is, is the conduct unlawful? And so I wanted to make sure what the State of Nevada was arguing here. It seems to me you've suggested that we don't have to cross the prong, is it unlawful or is it misleading. We're really talking about does the State have a governmental interest, which is substantial. Am I correct? Yes, Your Honor. You are correct. The problem is the first prong doesn't fit, the paradigm doesn't fit this activity. Again, we have it lawful in part of the State and illegal in other parts. And so it's almost impossible to characterize. And then so for the sake of argument, I move past the first prong to the second, to the substantial interest of the State, which is to keep the balance that has developed in the State over a century of time. And the balance is between the desire that Nevada has, like the other 49 states, to outlaw this activity, but balancing that with the reality that we're never going to get rid of it. It will always exist. It always has. And as I said, Nevada has captured it now. And it regulates it. And this works. But how is that different from the approach to alcohol consumption, for example, in most states, which, you know, we've had a strange history in this country where we tried banning it. It didn't work. We, therefore, have fairly stringent regulation, which varies from State to State, some of which, for example, only allow sales in State stores. And so the same essential problem, it seems to me, to be presented by alcohol, no? I don't think so, Your Honor. The reason why is because it is unlawful in 49 other states, and it's been a crime and a problem, a social concern since time immemorial. And that makes it different. Greater New Orleans acknowledged that gambling, for instance, is illegal in some form in almost every state. The same can't be said of prostitution. It is a completely different activity. And so it's a very different and weighty State interest. It is the balance we've struck. Nevada has struck. And the problem with this case, the problem with the decision below, is that it will unsettle the balance that has been working for over a century in Nevada. And that leads to really the ultimate question, what is the nature of the speech that we're protecting here or that the proponents want to protect? It's promotion of prostitution. They're here to assert a right to promote prostitution. And that simply can't, that doesn't fit the paradigm. And it's simply, it's implausible. It's unheard of. What does this apply to? I mean, for example, the Internet has pretty specific information about where to find a brothel in Nevada. Is that covered by this? I'm sorry, is that? It's covered by your statute. It may well be. It isn't. It is. I don't believe so. If it fits the definition of advertising. As far as I know, we looked at it. It does not cover it. But if you have somehow, you're defending the statute. Don't you know whether it covers it or not? Well, I would say, Your Honor, that in cases like that, it should be decided on an as-applied basis. And if it is truly advertising prohibited by the statute, then obviously it's a crime. But it has to be looked at as applied, certainly not a broad facial challenge. But doesn't that illustrate the problem with, I mean, the fact that this exists on the Internet? Or if, for example, the New York Times published in New York decided to, I'm sorry, decided to write an article about brothels in Nevada and had little, you know, there's a brothel at such-and-such a place and such-and-such a street and so on, this statute would at least presumptively apply to that. So this publication in New York about something that's legal in Nevada is going to not be able to be sold in Nevada? It would presumptively apply, but it's a rebuttable presumption. And I would offer this as well, Your Honor. If 201-430, subsection 3, which defines prima facie advertising, is unconstitutional for this reason, it should be excised. It can be removed from the statute. And we can keep some regulation of our legal brothel trade in Nevada. As it stands, the Court has left us with no regulation. What evidence is there in this record? The second part of the test is that there's a substantial government interest, and it seems to me you're arguing pretty tough about that. And supposing I suggest there is a substantial government interest, what evidence do I have in this record that the regulation directly advances the government interest? Your Honor, the ---- I mean, I look for a few statistics. I look for some professors or somebody who would tell me this. What evidence do I have, or do I just assume it? Judge Smith, I confess, admit, I have not much record. These laws have developed, as I said, over a century. Well, weren't the advertising provisions relatively new? They've been in place, I believe, since 79 for 30 years. So they're not around for centuries at all. So there's not a great deal of legislative history, though, from that period. Do we have anything in the record about what happened before 79? No, Your Honor, we don't. What I can offer you is this, and I will tell you before I do that the authority is not cited in any briefs, but in 6 Nevada Law Journal 217, which is the publication of the Nevada Law School, there is an extensive article providing a great deal of historical context. And I won't comment about its effects on this argument, but I offer that just for your edification. Well, if I don't have any evidence ---- I will offer some. I have some. I guess if I don't have any evidence that it will directly advance the government interest, then I can't get past that prong, can I? Your Honor, the evidence is that it works, and it has worked for over 100 years. What do you mean it works? How do we know it works? Because our legislature has been satisfied with the structure and the system that's in place. But we don't have any reason to think that there would be ---- I mean, there are counterarguments made about whether there would be more or less illegal prostitution if there were advertising. I mean, the counterargument is if people knew where to go legally, they wouldn't go illegally, which presumably is part of the reason why Nevada has legal prostitution to begin with. But if people can't find it, it's not very useful. Well, I ---- Why isn't advertising in Las Vegas, for example, more likely to lead to less illegal prostitution instead of more illegal prostitution? Let me offer this. The trade of prostitution has for, as I said, time immemorial existed. People can find it, even without legal advertising. Well, they can find it, but they may find it illegally. In other words, isn't ---- I mean, Nevada has decided to regulate and allow some legal prostitution because they decided they'd rather have legal prostitution than illegal prostitution because they can regulate it. But is there anything in the record that addresses the question whether the ban on advertising aids or impedes that decision other than just a guess? There's nothing in the record. There's footnote 187 in the law review article I mentioned that refers to the brothel industry's own website, and it reports that there is no prostitution crime in those counties where the brothels exist. So at least in those counties, it works. Well, that's the point, isn't it? So therefore, if people know where to go where it's legal, then they're less likely to go where it's not legal. At least that's a plausible hypothesis that isn't refuted by the record. That would be contrary, though, to the State's interest in keeping it no larger than it is. We don't have mega-resort brothels. But your State interest is not in having legal prostitution regulated where it is, but in having the least possible. But if you really wanted to have the least possible prostitution, you wouldn't have any prostitution, legal prostitution. There will always be prostitution. I know. Under the least possible legal prostitution, you wouldn't have any legal prostitution. That would be the ideal, yes, Your Honor. But it will always exist. At least where we have it in our rural counties, it's safe. Okay. There isn't disease. Right. There's a regime for disease testing. So you should want people who want to go to a prostitute to go there instead of going to an illegal prostitution. It's the balance between preventing increased demand and taking care of what there already is. And it is a delicate balance. Again, though, I want to get back, and I'll close with this, and I'd like to reserve the balance of my time. You have no balance. We'll give you some time. Go ahead. What is the nature of this speech? It is the promotion of prostitution. And that is simply not within the realm of the precedents that establish protection for speech. It's not core speech. It's not marketplace of ideas. It can't be the informing the customer so that they can get the best deal. But it is a commercial activity in Nevada, is it not? It is indeed. And so how do we get it out of the commercial speech context? Again, it is a different balance, a different balance of strong state interest and the necessary means to accomplish it. And the proof of that system is that it has worked for all these decades. Even that doesn't work because the speech prohibition has only been there for 29 years. Yes. And that's quite ---- We haven't ---- it doesn't seem to ---- the system doesn't seem to be dependent upon it in any way. Well, Your Honor, that is 30 years. That's quite a long time. Right. But it was also existing before that for another 70 or 80 years. Yes. I'll concede that. Thank you very much. Thank you. May it please the Court. Good morning. Actually, afternoon at this point. I'm Alan Lichtenstein from the ACLU of Nevada. For the plaintiff respondents with me at the desk is Maggie McCletchie, also from the ACLU of Nevada. I'd like to address a few points. It seems pretty clear that the State's position is that somehow the district court erred in following relevant Supreme Court case law. Well, is there any Supreme Court case law, aside from Bigelow v. Virginia, which has kind of been reanalyzed, that holds that you can't ban an activity from being advertised in a place where it is illegal, even if it's legal elsewhere? I mean, in fact, the cases that have addressed that have come ---- I mean, there's Edge Broadcasting, I guess, which came out, which approved it. So what case is there that says that you need, aside from Bigelow, that says that you have to allow the advertising, that the First Amendment protects the advertising of an activity legal in X place if it's legal in Y place? Well, let me answer that in two ways. First, the case that's most on point would probably be Greater New Orleans Broadcasting, which talked about broadcasting of gambling and kind of eviscerated the whole thing. But I thought the problem was that there was gambling in the place where they weren't allowing the gambling. But it also had language that basically said that the extent of ---- and this was also broadcasting, by the way, which is different than other kinds of speech, has much more ---- But you speak a little louder on this one. Sorry. But even with 44 Liquor Mart and other cases, the basic premise of allowing or prohibiting speech where it is not allowed, where the activity itself would not be allowed, isn't covered. The definition of commercial speech, even under Central Hudson ---- Could I have the answer to my question? I mean, what the most ---- two most directly on point cases, it seems to me, are Bigelow and Edge Broadcasting. Is that true? Are those the two that deal with advertising something where it is illegal about a place where it's legal? Is that right? Well, Bigelow is the only one who dealt with that specifically. Edge talked about ---- What about Edge Broadcasting? Edge Broadcasting dealt with where it was legal but bled into another jurisdiction where it's not ---- Okay. Where it was illegal, similar to Greater New Orleans Broadcasting. I would say that Greater New Orleans Broadcasting is the case that is most recent and most on point on that one. But ---- However, in Edge and New Orleans, it seems to me that the Supreme Court, without even looking too much at Bigelow and the dissents suggesting they're not doing what they ought to do, didn't say that the state where one or that the ---- I'm going to take Edge, for instance, that the federal government couldn't regulate both by saying you can't broadcast from this which will go directly into this area because they don't allow it, but you can regulate that they not go there. And, therefore, addressing my colleague's question, it seems to me that the case is if I look directly at where legal and not legal, that part of the statute that suggests you cannot do it in the places where it's illegal is valid. I would disagree also ---- Why? Again, Greater New Orleans ---- What case? Greater New Orleans Broadcasting, Valley Broadcasting, a case from this particular  Moreover, even the language of ---- and, again, those were in broadcast context which have a very different regulatory scheme than advertising in general. I will give you that. If you look at even the definition of what is commercial speech in Central Hudson, in Virginia that involves the first prong can be banned if it is an illegal transaction. What? Advertising something that is a legal transaction, even if it wouldn't be legal if it were taking place someplace else, again, the transaction itself, if someone is advertising which is one of our plaintiffs, is advertising come to the Shady Lady for legal brothel services at the Shady Lady, that's a legal transaction. So as far as you're concerned, is there any limit to that? As long as it's legal, you're going to advertise it. The limits are the same limits that occur to any other speech.  Well, let me give you a hypothetical, which I think is not too far-fetched. You're an American investor in Thailand. You've got a stake in a whole set of brothels in Thailand. Now you'd like to advertise them in Nevada. Can you do it? You've got a constitutional right as an American investor to promote your investment in Thailand by advertising your legal brothels there? It's an interesting hypothetical. Well, answer it. I don't really have the answer because there are issues internationally as it relates to treaties and also the 14th Amendment. He's an American citizen advertising his business in brothels. The Bangkok brothels are famous. He's advertising them. They're better than Nevada's. Moreover, the 14th Amendment right of privileges and immunities of people in the United States to speak and have all those rights, whether they're in one county or another, doesn't apply. He's speaking in Nevada. He's not speaking in Bangkok. I'm sorry. I didn't understand your hypothetical. I thought it was from Bangkok. No, no. He's invested. He's got a business in Bangkok. He's advertising it in Las Vegas. I would say, again, we haven't briefed this, but barring treaties, I would say the answer would be yes. And certainly in terms of information. I don't understand. To go back to the case law, all right? Greater New Orleans didn't disturb edge broadcasting, right? I disagree. I think it cut out the basic argument. It starts out in the first paragraph. It says, in edge broadcasting, we upheld the constitutionality of a statute applied to broadcast advertising of Virginia's lottery by a radio station in North Carolina when no such lottery was authorized. Today we hold that it cannot be applied to advertisements of private casino gambling that are broadcast by radio stations in Louisiana where such gambling is legal. In other words, it seems to be saying the difference is between advertising in a place where the activity is illegal and advertising in a place where it's legal. And it never mentions edge broadcasting again, as I recall, because it didn't regard it as pertinent. Is that accurate? It did not mention edge broadcasting again. I think if you read through the logic of Greater New Orleans Broadcasting, as well as Valley Broadcasting. But the whole premise of the opinion is that it was a restriction on something that was legal in the place where the restriction existed. Is that not right? Within a context of a broadcast medium that has special regulation. That's not what I'm asking you. I'm asking you, was it limited to legal activity in the place where the broadcasting occurred? As set up in Greater New Orleans. Are you talking about edge or Greater New Orleans Broadcasting? Greater New Orleans. The whole premise was what was upheld or was struck down was a bar on advertising something that was legal in the place where the advertising was being heard. It was legal within the place. It was for advertising for activity that was in a different jurisdiction. There may have been similar activity in a place that was being heard. Exactly. The whole point was that it was legal. But the whole opinion is set up on the premise that gambling was legal in Louisiana and that we're trying to limit the speech anyway. I think that's one of the premises. I don't think it was the only premise. And, again, I think the premise from Greater New Orleans Broadcasting, as with Loral Art, as with 44 Liquor Mart, was that when you have legal transactions and you are advertising legal transactions, that those are legal if there's no other reason to make them illegal. So the obvious implication of your argument then is that, and to follow on Judge Newton's point, is that they could advertise in California, too. That is correct. Let me follow up on what I think is the difficulty of your case. You've got all these analogies from the sale of drugs. And you, by implication, treat human sexual intercourse as another good. Now, that's not the experience of the American people, the American culture. It's something different. It's not done in public. It's not done by strangers most of the time. And you are saying this sui generis activity is just like selling beer. That's the difficulty of your position, Mr. Lichtenstein. I don't believe so. Tell me why it isn't sui generis. The state of Nevada has treated it as a legal activity within the context of legal brothels. That's all we're talking about. We're not talking about an activity, and I would consider it more of a service than a good, but we'll leave that one aside for a moment. You say it's just another commercial service. Is that your position? It is. This is the state of Nevada's position. The state of Nevada cannot change the American culture, human nature. A little legal blessing doesn't change, you know. The rest of the country doesn't think of it that way. The rest of the country? I doubt if the population of the state thinks of it that way, whatever its history was. But you come in and you're defending a commercial enterprise and say, yes, we're just the same as you other things. We're selling services. Really? That's pretty incredible, I'll tell you. Under the law, absolute law. Law? Under the law. The law cannot change culture. The law may not change culture, but we're here in a court of law, and the law, I think, has to apply. To go back to the argument about where it's illegal, if you follow the logic that the only place that something can be advertised is the exact place where it is legal, well, we used the example in our brief of that would make the newspaper that comes to my house every day illegal because it's advertising a used car lot that's not allowed in that zone. You follow the logical conclusion, and any off-premises advertising would be, per se, advertising something illegal, because by being off-premises, it's doing it in a place where it's not licensed to do it. So that kind of logic really can't hold. Again, looking at the Supreme Court precedents, they're outside of the very narrow instance of edge broadcasting where it talks about a broadcasting context. There is no case law that says that if you're not allowed to engage in any commercial activity in a specific location, there can be no advertising about legal activity that may be down the road or in the next county. Do you think edge broadcasting would have come out differently if it was a newspaper? I think it absolutely would. Again, we're talking about regulation of broadcasting that it would come out as differently as indecency cases have come out from broadcasting in, say, the intranet or newspaper or even right to reply and any number of differences. Could you briefly address the other part of the statute, the part that discusses the advertising in the places where it is legal, the public theater, public space prohibition? Certainly. In those cases, too, there is – it's certainly not narrowly tailored. When you say any place on a roadway or in a theater, roadway doesn't just mean billboards. And I think even with billboards, Lorillard would sort of cut out the rationale behind that. It's not just in places where children may congregate, although, again, Lorillard would seem to have taken care of that one. The way it's written on the street in a county where it's legal, even if it's down the block, if someone says, hey, come to my brothel, it's over there, they're breaking the law. So clearly it's not – there's no reasonable fit there in terms of theaters. Well, first of all, theaters are not a captive audience. You have to decide to go to a theater. And you have the real anomaly of legal brothels cannot advertise in X-rated theaters because we're protecting children. That obviously doesn't fit. So the question is, could there be time, place, and manner restrictions? Well, this really isn't a time, place, and manner restriction because it's content-based. And the rationale for protecting children from – and this is from the state. It's not from our analysis. The rationale for protecting children is protecting them from the knowledge of the existence of legal brothels, the assumption that somehow or other people in those towns where there are legal brothels, and these are small towns, don't know about it, is, again, not supported by any record and any evidence at all. The record simply isn't there. And if you look at the Edenfield v. Fane and the number of times that the statement there, which is that it is up to the state to show that there is, in fact, a reasonable fit and that this actually does work to promote the specific interest, all of that is lacking. Okay. Thank you for your question. As I understand your answers, if Coyote Publishing bought a series of ads in the San Francisco Chronicle, the ACLU would be here defending that. Well, I can't say what the ACLU of San Francisco would do, but I would say that if we at the ACLU of Nevada would absolutely say that that is legal because it is for a legal transaction, which is what this statement in Central Hudson refers to. Thank you. Thank you. Counsel. I have about a minute or so. Let's see. I guess you. Your Honor, I won't belabor this. I'll simply suggest that a test that can't discern nuances like this isn't really a test at all. And I think Central Hudson does have room to understand and accommodate the nuance of this case. What about the public space, public theater prohibition in the towns where it's legal? I don't understand how that could possibly be all right. The prohibition on that applies in the areas where prostitution is legal. How is that found? Your Honor, it's part, again, of the balance of keeping restraint on this trade. But in terms of the basic commercial speech, you're just essentially fighting the commercial speech doctrine at that point. The legal illegal problem is difficult. But when you're dealing with an area in which it is legal and in which it is proposing a legal commercial transaction, what is the argument that isn't accounted for in all of the commercial speech cases for not allowing it? Let me suggest that it is to limit profile of the industry even where it's legal. But that's the exact argument that was rejected with regard to alcohol and was rejected with regard to cigarettes and so on. I mean, I understand that once there is a legal transaction in the place in which it's illegal, all you're trying to do is keep information from people. First of all, those are different activities, again. And it's about keeping profile of this activity, even in the communities where it's legal, at a minimum. And certainly to avoid any appearance that the State condones it or promotes it or wishes it to exist. I mean, it does wish it to exist, because if it didn't want it to exist, it could just ban it. It won't go away. This is pragmatism of the West. And with that, I'll thank you for hearing me today. Thank you very much. I have a question. Did you ask for a stay of Judge Reiner's order? We did not, Your Honor. Why not? You've got now these billboards in Las Vegas, don't you? We have. I frankly don't know if we have billboards for brothel advertising in Las Vegas. I don't know. You don't know. I've seen them in Reno. Yeah. And all I can say is no reason. It gives us no explanation why it didn't stay. It's pretty usual to ask for a stay of an order, holding a statute unconstitutional. You're defending it, and you didn't ask for a stay. Your Honor, I don't know the answer to that. It's amazing. I don't have an answer for it, Your Honor. And if you didn't get a day, you could have gone to the circuit. But you didn't do it. You didn't. Well, you're not the Attorney General. I am not, and I wasn't the Solicitor General at that point in time. Thank you very much. Thanks, both counsel, for an interesting argument and an interesting case. The case of Coyote Publishing Company v. Miller is submitted.
judges: Noonan, Berzon, Smith